

**EOD**

09/30/2008

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| HORACE MULLICAN and | § | Case No. 05-44423 |
| TAMARA MULLICAN, | § | (Chapter 7) |
| | § | |
| Debtors. | § | |
| _____ | § | |
| CHRISTOPHER J. MOSER, TRUSTEE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Adv. Proc. No. 07-4150 |
| | § | |
| HORACE MULLICAN, TAMARA | § | |
| MULLICAN and A.G. EDWARDS | § | |
| & SONS, INC., | § | |
| | § | |
| Defendants. | § | |

### <u>MEMORANDUM OPINION</u>

On December 14, 2007, this Court conducted a trial on the "Second Amended Complaint" (the "<u>Complaint</u>") filed by Christopher J. Moser, Trustee (the "<u>Trustee</u>") against Horace and Tamara Mullican (collectively, the "<u>Debtors</u>"). The Trustee seeks a judgment (i) declaring certain property to be property of the estate, (ii) declaring that the disputed property is not exempt from the claims of the Debtors' creditors, (iii) requiring the Debtors to turnover the disputed property to the Trustee, (iv) finding that the Debtors violated the automatic stay and made unauthorized transfers of estate property post-petition, and (v) denying the Debtors a discharge in bankruptcy pursuant to 11 U.S.C. §727(a)(2)(B), (3), (4)(A), (4)(D) and (5). The Court exercises its core jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b)(2) and 1334. This Memorandum Opinion

embodies the Court's findings of fact and conclusions of law.  *See* FED. R. BANKR. P. 7052.[1]

## RELEVANT BACKGROUND[2]

On August 19, 2005 (the "Petition Date"), the Debtors filed a petition for relief under Chapter 13 of the Title 11 of the United States Code (the "Bankruptcy Code").[3] The Debtors' unsecured debt consisted primarily of $119,000 in charges placed on nine credit cards.  The Debtors did not own any real property, and their only secured creditor was Texas Credit Union, which had a purchase money security interest in their 2001 Chevrolet van.

Horace graduated from college in 1980.  After graduating from college, Horace worked as a bank auditor for a few years, then as a bank examiner for the Office of the Comptroller for the Currency for seven years, and then for various private banks.  He obtained a job with Countrywide Home Loans ("Countrywide") in 2001, where he earned approximately $138,000 per year in salary and commissions.  Horace's salary at Countrywide was nearly three times what he had made in any of his previous jobs.

---

[1] To the extent any of the following findings of fact are construed as conclusions of law, they are hereby adopted as such.  Likewise, to the extent any of the following conclusions of law are construed as findings of fact, they are hereby adopted as such.

[2] The relevant background includes two Mrs. Mullicans.  Therefore, for the sake of clarity, the Court will occasionally refer to individuals by their first names throughout this Memorandum Opinion.

[3] The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (the "BAPCPA") significantly amended many provisions of the Bankruptcy Code.  The revisions made to the Bankruptcy Code by the BAPCPA apply to cases filed after October 17, 2005.  *See* BAPCPA, 109 P.L. 8 § 1501(b)(1) ("the amendments made by this Act shall not apply with respect to *cases commenced* under title 11, United States Code, before the effective date of this Act.") (emphasis added); *see also, e.g., In re Kilroy,* 354 B.R. 476, 496-97 (Bankr. S.D. Tex. 2006).  Because the Debtors commenced their bankruptcy case prior to the BAPCPA's effective date, the Court looks to the pre-BAPCPA version of the Bankruptcy Code in determining the parties' disputes.

Horace was laid off from Countrywide in January 2004. Horace was employed as a mortgage loan consultant for Highland Capital Living as of the Petition Date, and his gross monthly salary was $2,500. Tamara had recently obtained a job as a secretary for Furniture Marketing Group, and her gross monthly salary was $2,340 as of the Petition Date.

The Debtors have two minor children. The youngest, who was six at the time of trial, is autistic. Horace testified that the medical condition of his youngest child has hampered his wife's ability to work outside the home. At the time of trial, his wife was studying to become a paralegal.

On February 16, 2006, the Debtors amended their bankruptcy schedules to reflect a change in their employment status. As of that date, Horace had obtained more lucrative employment with the Small Business Administration/Office of Disaster Assistance, where he earned a gross monthly salary of $4,460 and estimated monthly overtime of $618, for a total gross monthly income from wages of $5,078. Tamara was unemployed as of February 16, 2006.

The Court entered an order confirming the Debtors' Chapter 13 Plan (the "Plan") on February 23, 2006. Under the Plan, the Debtors were to make monthly payments of $325 to the Chapter 13 trustee for 57 months, for a total payment of $18,525 to their creditors. Nearly this entire amount went to pay the administrative claim of Debtors' bankruptcy attorney and the secured claim of Texas Credit Union. The projected dividend to the Debtors' unsecured creditors was 1.04% -- that is, unsecured creditors had allowed claims against the Debtors for credit and consumer debt in the amount of

3

$104,482.11, and the Debtors planned to pay a total of $1,091.49 to their unsecured creditors on a pro rata basis over 57 months.

Some time prior to the Petition Date, Horace was named by his mother, Anita W. Mullican, as the beneficiary of her Individual Retirement Account (the "IRA") in the event of her death. Anita had established the IRA at A.G. Edwards & Sons, Inc. ("A.G. Edwards"). On the Petition Date, Horace was also the sole beneficiary of Anita's Last Will and Testament (the "Will").

Anita was alive as of the Petition Date. The Debtors did not disclose any beneficial interest relating to the IRA or the Will in their original bankruptcy schedules, and, at trial, they disputed that they were aware of the existence of any such interest. The only property claimed by the Debtors as exempt in their original Schedule C (Property Claimed as Exempt) was a 1997 GMC Silverado, a 2001 Chevrolet van, and a computer.

After the Petition Date, the Debtors used a credit card belonging to Anita without prior approval from this Court. They also made payments on Anita's credit card while their bankruptcy case was pending. The payments were not disclosed in the Debtors' bankruptcy schedules or in their confirmed Plan.

Horace's mother died on October 24, 2006, leaving the entirety of her estate to Horace. Her estate included her home, two vehicles, funds in two checking accounts totaling approximately $14,000, and the cash value of a life insurance policy in the amount of $986.49. Horace also became the trust beneficiary of his mother's IRA (the "Inherited IRA"), which held a balance of approximately $162,000. At trial, Horace testified that he contacted his bankruptcy attorney after his mother's death and that he

believed the Inherited IRA and his inheritance under his mother's Will were not property of the bankruptcy estate.

In November 2006, Horace listed his mother's home for sale.  On December 1, 2006, Horace executed an IRA Adoption Agreement with respect to his Inherited IRA. At the time he executed the IRA Adoption Agreement, Horace withdrew $6,000 from the Inherited IRA.[4]  A.G. Edwards withheld 15% of this amount, or $900, for income tax purposes.  In January 2007, Horace withdrew an additional $11,900 from the Inherited IRA, and 15%, or $1,785, was withheld by A.G. Edwards for income tax purposes.

During December 2006, January 2007, and February 2007, the Debtors purchased new furniture, jewelry, a laptop computer, and a desktop computer for their children, among other things.  Their banking and credit records reflect that they threw a birthday party for their youngest child, and they took a family vacation that spring.  They also used a portion of the money they received from the Inherited IRA and the Will to pay off the charges they had placed on the credit card that Horace's mother had allowed them to use.

With respect to his mother's home, Horace testified that he spent approximately $5,000 preparing the home for sale.  Horace sold the home on February 16, 2007 for approximately $110,000.  After satisfying the mortgage on the home, the Debtors received approximately $20,000 in cash as a result of the sale.  The Debtors also retained all funds in Anita's checking accounts (approximately $14,000), the cash value of the life insurance policy (approximately $1,000), and one of his mother's vehicles (a 2005 Kia Amante) for their own use.

---

[4] Although Horace can make no contributions to the Inherited IRA, he can make withdrawals with a telephone call.  Any such withdrawals from the Inherited IRA constitute taxable income.

On March 16, 2007, Horace received notice from his employer that he would be laid off from his job effective March 31, 2007.  On April 18, 2007, the Debtors filed a Notice of Conversion to Chapter 7.  The Debtors filed amended bankruptcy schedules on the same date in which, among other things, they denied that the Inherited IRA was property of the estate but, as a precaution, claimed the Inherited IRA as their exempt property in their amended Schedule C.  The only income listed on the Debtors' Schedule I (Current Income of Individual Debtor(s)), as amended, was a "family contribution" of $1,576 per month and "IRA withdrawal(s)" of $1,700 per month.  The Debtors did not include the Kia Amante in their bankruptcy schedules but stated their intention to surrender the 2001 Chevrolet van to Texas Credit Union.

Horace received approximately $1,500 for his accrued time off when he lost his job with the Small Business Administration in March 2007.  In addition, the Debtors were anticipating a tax refund of approximately $700 from the Internal Revenue Service when they filed the Notice of Conversion.  Two days after filing the Notice of Conversion, on April 20, 2007, Horace withdrew $5,000 from the Inherited IRA at A.G. Edwards.

The Court entered an order converting the Debtors' case to Chapter 7 on April 23, 2007 (the "Conversion Date").  On the same day, coincidentally, Horace was re-hired on a month-to-month basis by the Small Business Administration.  Horace was to be paid at the same salary grade level he had previously received.

Horace and Tamara both attended the meeting of creditors in their converted bankruptcy case.  At the meeting, Horace and Tamara testified under oath that all of their assets were listed on their schedules.  That statement was false.  Horace also falsely

6

testified that his inheritance consisted of only his mother's home and the Inherited IRA. He disclosed the sale of the home to the Chapter 7 trustee, but falsely stated that he had received only $15,000. He further stated that he had "taken a little" of the money out of the Inherited IRA for expenses while he was laid off. Horace's statements regarding his withdrawals from the Inherited IRA were, at best, misleading. The Chapter 7 trustee requested copies of the Debtors' bank statements and a copy of Anita's Will. The Debtors, however, failed to produce all of the requested bank statements until after the Chapter 7 trustee initiated this adversary proceeding.

The Debtors' banking and credit records reflect that they continued to enjoy the proceeds of the Inherited IRA and Horace's inheritance under his mother's Will after converting their bankruptcy case and prior to the deadline for objecting to the exemptions claimed in their amended Schedule C. Tamara purchased additional jewelry for herself in May 2007. The Debtors celebrated their anniversary in August 2007 with an expensive dinner at Kirby's Steakhouse. The Debtors also took a vacation to Galveston that summer, among other things.

On June 27, 2007, the Chapter 7 trustee filed an Objection to Exemptions wherein he asserted that the funds received from the Inherited IRA are estate property. The Chapter 7 trustee challenged the Debtors' attempt to exempt the funds in their amended bankruptcy schedules. On July 3, 2007, after receiving the Objection to Exemptions, Horace withdrew $20,000 from the Inherited IRA to pay for anticipated future expenses, included expense relating to his wife's education. This withdrawal brought the total amount of cash withdrawals from the Inherited IRA to $53,782.36 (gross).

On July 16, 2007, the Debtors and their counsel filed a Supplemental Disclosure of Compensation (the "Compensation Disclosure") with the Court disclosing that the Debtors paid their counsel $2,500 for services related to the Chapter 7 trustee's objection to their claimed exemptions.  The Compensation Disclosure states that the money for the payment originated from the Debtor's wages.   Horace has since contradicted the Compensation Disclosure by stating under oath that the money actually came from the Inherited IRA.

On August 28, 2007, the Chapter 7 trustee filed his Original Complaint in this case with a request for a temporary restraining order and a preliminary injunction against the Debtors and A.G. Edwards.   The Court entered a temporary restraining order enjoining the Debtors from spending, dissipating, encumbering or otherwise putting the funds in the IRA beyond the Chapter 7 trustee's reach.   On September 25, 2007, the Court entered a preliminary injunction which enjoined the "pledging, assigning, withdrawing, transferring, concealing, disposing of, spending, encumbering, or dissipating the [Inherited IRA] and or the [Inherited IRA] funds until further order of this Court."  The Inherited IRA had a balance of $112,884.98 at the time of trial.

On the eve of trial, the Debtors changed their litigation strategy regarding the Inherited IRA.  The Debtors removed the Inherited IRA from their claim of exemptions by filing an amended Schedule C on November 16, 2007.  Thus, the Debtors contended at the trial on December 14, 2007, that the Inherited IRA was not property of their bankruptcy estate, that they had not violated §§ 362 or 549 of the Bankruptcy Code, and that the Court should grant them a discharge in their Chapter 7 case.

# DISCUSSION

## A. Property of the Estate as of the Petition Date

As an initial matter, filing a voluntary petition for bankruptcy relief creates a bankruptcy estate.  Property of that estate is defined by §541 of the Bankruptcy Code to include "all legal or equitable interests of the debtor in property as of the commencement of the case."  11 U.S.C. §541(a)(1).  Legislative history shows that Congress intended §541 to be interpreted broadly.  The House and Senate Reports stated:

> Under paragraph (1) of subsection (a), the estate is comprised of all legal or equitable interest of the debtor in property, wherever located, as of the commencement of the case. The scope of this paragraph is broad. It includes all kinds of property, including tangible or intangible property, [and] causes of action···· The debtor's interest in property also includes "title" to property, which is an interest, just as are a possessory interest, or leasehold interest, for example.

*In re Canon*, 130 B.R. 748, 750 (Bankr. N.D. Tex. 1991) (citing S. Rep. No. 989, 95th Cong., 2d Sess. 82 (1978); H.R. Rep. No. 595, 95th Cong., 1st Sess. 367 (1977), U.S. Code Cong. & Admin. News 1978, pp. 5787, 5868, 6323).

In this case, the Chapter 7 trustee argued at trial that Horace had a vested interest in the Inherited IRA and the property bequeathed to him in the Will when the Debtors filed for bankruptcy.  The Chapter 7 trustee further argued that this interest was property of the bankruptcy estate under §541(a)(1) as of the Petition Date, which the Debtors should have disclosed in their original bankruptcy schedules.  The Court, however, disagrees with the Chapter 7 trustee's argument that §541(a)(1) operates to make Horace's interest under his mother's Will or Horace's interest as a beneficiary of his mother's IRA property of the bankruptcy estate as of the Petition Date.

Section 541(a)(5), which specifically addresses bequests and inheritances, provides that the bankruptcy estate includes the following beneficiary interests:

> Any interest in property that would have been property of the estate if such interest had been an interest of the debtor on the date of the filing of the petition, and that the debtor acquires or becomes entitled to acquire within 180 days after such date ... by bequest, devise, or inheritance … or … as a beneficiary of a life insurance policy or of a death benefit plan.

11 U.S.C. §541(a)(5)(A), (C).  These provisions would be superfluous if such beneficiary interests were already property of the Debtors' estate under §541(a)(1).  A basic canon of statutory construction warns against superfluousness: "Judges should hesitate ... to treat [as surplusage] statutory terms in any setting …." *United States v. Ceballos-Torres,* 218 F.3d 409, 412 (5th Cir. 2000) (alteration in original) (citing *Bailey v. United States,* 516 U.S. 137, 145 (1995)).  Moreover, it is a well settled rule of statutory interpretation that "[w]here there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one, regardless of the priority of enactment." *Morton v. Mancari,* 417 U.S. 535, 550-51 (1974).  Thus, in this case, the Court holds that §541(a)(5) controls whether a beneficiary's interest under a will constitutes property of the estate as of the petition date.  Even if the Court were to apply §541(a)(1), it does not appear that Horace had any cognizable interest in Anita's property under Texas law until after Anita's death. *See Dougherty v. Humphrey,* 424 S.W.2d 617, 621 (Tex. 1968) (the rights of beneficiaries under a will vested at the time the will was probated).  The Court, therefore, concludes that, inasmuch as Horace inherited the property described in the Will after 180 days of bankruptcy, that property was not property of the estate on the Petition Date pursuant to §541(a)(1) or (5).

In contrast, the rights and interests of a contractual beneficiary of an IRA are fundamentally different. The parties do not dispute that Anita's IRA was a trust subject to ERISA or that it contained an anti-alienation provision, as required by 29 U.S.C. §1056(d)(1), which prohibited Anita from alienating her interest in her IRA during her lifetime. Thus, the nature of Horace's interest in his mother's IRA was akin to an interest in a spendthrift trust as of the Petition Date – even if Horace had a vested beneficial interest in his mother's IRA at that time. *See* 29 U.S.C.A. § 1056(d) (requiring that "[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated"); 26 U.S.C. §401(a)(13)(A) (conditioning qualification under ERISA and thus exemption from taxation on the non-transferability of pension benefits: "[a] trust shall not constitute a qualified trust under this section unless the plan of which such trust is a part provides that benefits provided under the plan may not be assigned or alienated"). The property of a spendthrift trust is excluded from the bankruptcy estate if those assets are protected from the beneficiary's creditors under state law. 11 U.S.C. §541(c)(2); *see also Shurley v. Texas Commerce Bank-Austin, N.A. (In re Shurley),* 115 F.3d 333, 336-37 (5th Cir. 1997). Under Texas law, which is applicable to this case, a spendthrift provision in a trust protects trust property from the beneficiary's creditors unless "the settlor is also a beneficiary of the trust." TEX. PROP. CODE § 112.035(d); *see also Shurley,* 115 F.3d at 337-38. The Court, therefore, concludes that, the Debtors may have had an interest in Anita's IRA within the meaning of §541(a)(1) as of the Petition Date, but that interest was excluded from the estate pursuant to §541(c)(2).

## B. Property Acquired After the Petition Date in Chapter 13 Cases

The Court's conclusion that Horace's interest in Anita's property was not property of the bankruptcy estate as of the Petition Date does not end the Court's inquiry. The Bankruptcy Code contains an expanded definition of property of the estate in Chapter 13 cases, providing that "[p]roperty of the estate includes, in addition to the property specified in section 541 of this title ... all property ... that the debtor acquires after the commencement of the case but before the case is closed...." 11 U.S.C. §1306(a)(1). Thus, property that a Chapter 13 debtor acquires post-petition becomes property of the estate pursuant to §1306(a)(1), in contrast to the post-petition acquisitions that do not become part of a Chapter 7 or Chapter 11 estate. In exchange for giving up their right to future earnings and property acquired post-petition, a debtor gains many benefits in Chapter 13, such as the ability to discharge debts that are not otherwise dischargeable in Chapter 7 cases at the conclusion of the repayment plan, to retain all property of the estate, to modify the rights of secured creditors, and to cure and reinstate mortgages. *See* 11 U.S.C. §§ 1328, 1327, 1322(b)(2), and 1322(b)(3) and (5).

Courts and commentators have recognized a statutory tension between §1306(a)(1) and the vesting provisions of §1327(c). *See generally* Keith M. Lundin, CHAPTER 13 BANKRUPTCY, §230.1 (3rd ed. 2002). Section 1327(c) provides that, except as otherwise provided in the plan or confirmation order, the confirmation of a plan vests all property of the estate in a debtor, and the property vesting in the debtor "free and clear of any claim or interest of any creditor provided for by the plan." Some courts have ignored §1306(a) and have concluded that the "vesting" at confirmation extinguishes the estate. *See, e.g., Oliver v. Toth (In re Toth)*, 193 B.R. 992 (Bankr. N.D. Ga. 1996).

However, most courts seem to have adopted an approach treating all post-confirmation earnings and post-confirmation property as property of the estate under §1306(a).  *See generally* Lundin, CHAPTER 13 BANKRUPTCY, at 230-15 (collecting cases).  *See also, e.g., United States v. Harchar*, 371 B.R. 254, 268 (N.D. Ohio 2007) (calling this approach the "growing majority"); *Barbosa v. Soloman*, 235 F.2d 31, 25 (1st Cir. 2000) (calling this approach the "middle of the road" approach).  Likewise, most courts analyzing post-petition windfalls, such as an inheritance, have found them to be property of the Chapter 13 estate.[5]  *See, e.g., In re Bass,* 267 B.R. 812, 814 (Bankr. S.D. Ohio 2001) ("A debtor might receive unanticipated income over the first thirty-six months of the plan that is not reasonably necessary for maintenance or support (*e.g.,* wage increases, tax refunds, inheritances, gifts, lottery proceeds, insurance proceeds, proceeds from causes of action, or proceeds from the sale of property)."); *In re Jacobs,* 263 B.R. 39, 46 (Bankr. N.D. N.Y. 2001) ("For purposes of plan modification, an increase in income or the receipt of a large sum of money constitutes a substantial change.... [T]his is so where the debtor acquires property post-confirmation, the likes of which would result in a windfall to the debtor absent plan modification, such as lottery winnings or an unexpected inheritance."); *In re Nott,* 269 B.R. 250 (Bankr. M.D. Fla. 2000) (holding that a $300,000.00 inheritance one year after confirmation was property of the estate pursuant to §1306(a)); *In re Studer,* 237 B.R. 189, 192 n. 5 (Bankr. M.D. Fla. 1998) ("Courts easily have found a substantial

---

[5] It is noteworthy that BAPCPA has imposed new post-confirmation reporting requirements upon debtors.  Section 521(a)(1)(B)(vi) now requires a debtor to submit a statement disclosing any reasonably anticipated increase in income or expenditures over the 12-month period following the date of the petition.  Additionally, at the request of the Court, United States Trustee, or any party in interest, individual debtors must file statements of income and expenditures annually after the plan is confirmed and until the case is closed, as well as their annual income tax returns while their case is pending.  *See* 11 U.S.C. §521(f).  If a debtor who originally proposed to make no or minimal payments to unsecured creditors experiences an improvement in his financial condition, the debtor, the debtor's creditors or the Chapter 13 trustee may move to modify his confirmed plan.  *See* 11 U.S.C. §1329.

or unanticipated change where the debtor's income drastically increases. Such windfalls include winning the lottery after confirmation of the Chapter 13 plan. Substantial and unanticipated circumstances also include the receipt of a large inheritance."); *In re Euerle,* 70 B.R. 72 (Bankr. D. N.H. 1987) (addressing an increase in debtor's income through receipt of a large inheritance).

In this case, the Order Confirming Chapter 13 Plan and Related Orders states: "IT IS FURTHER ORDERED THAT upon confirmation, that all property of the estate shall vest in the Debtor(s) subject to the automatic stay provisions of 11 U.S.C. § 362 until an order of Discharge or Dismissal order is entered."  The Court interprets this language to mean that property of the estate existing as of the confirmation date revested in the Debtors at confirmation.   With respect to post-confirmation property, this Court concludes that the approach adopted by the courts in *Harchar* and *Barbosa*, among others, is the most logical reconciliation of §§ 1306(a) and 1327(b).  *See, e.g., In re Wetzel,* 381 B.R. 247, 253 (Bankr. E.D. Wis. 2008) (discussing the interpretative tension between §§ 1306(a) and 1327(b)).  The estate is not extinguished by confirmation, but rather is comprised of new property acquired by the debtor post-confirmation, whether via inheritance, wages or other means.  Under this rule, the Debtors' post-confirmation property, including Horace's inheritance under the Will and the Inherited IRA, was property of their estate at the time of their conversion.[6]

---

[6] For the reasons stated by the bankruptcy court in *In re Kirchen,* 344 B.R. 908, 914 (Bankr. E.D. Wis. 2006), the nature of Anita's IRA changed upon her death.  What was previously maintained to provide tax-deferred income during Anita's retirement years was transformed into a source of immediately payable income to Horace, regardless of his age or retirement status.  An inherited IRA is not exempt from being taxed as gross income pursuant to 26 U.S.C. §408(d)(3)(C), and many bankruptcy courts have treated inherited IRAs differently than IRAs having funds which the debtor contributed to as an employee.  *See, e.g., In re Navarre,* 332 B.R. 24 (M.D. Ala. 2004) (inherited IRA not exempt under Alabama law); *In re Sims,* 241 B.R. 467 (Bankr. N.D. Okla. 1999) (inherited IRA not exempt under Oklahoma law); *In re Jarboe,* 365 B.R. 717 (Bankr. S.D. Tex. 2007) (inherited IRA not exempt under Texas law).

### C. Effect of Conversion on Property of the Estate

Due to the expanded definition of "property of the estate" in a Chapter 13 case, a conflict arose when the Debtors converted their Chapter 13 case to a Chapter 7 case. The conflict concerns whether the property in their Chapter 7 estate includes all property acquired by the Debtors or earned by the Debtors after commencement of the Chapter 13 case, but before conversion to Chapter 7, or whether the Chapter 7 estate consists only of property of the Debtors' estate as of their original petition date. Prior to 1994, courts took many different approaches in determining the extent of the property of the estate in the Chapter 7 case upon conversion from Chapter 13. *See, e.g., Matter of Lybrook,* 951 F.2d 136 (7th Cir. 1991) (property inherited during a Chapter 13 case remained property of the estate following conversion to Chapter 7), *In re Bobroff,* 766 F.2d 797 (3rd Cir. 1985) (tort causes of action that accrued during a Chapter 13 case were not property of the estate upon conversion). In an attempt to resolve the conflicting decisions regarding the correct identity of property of the estate in the Chapter 7 case upon conversion from Chapter 13, Congress added a new §348(f) to the Bankruptcy Code in the Bankruptcy Reform Act of 1994.

Section 348(f)(1)(A) clarified that property of the estate in the converted case shall consist of property of the estate, as of the date of filing of the petition, that remains in the possession of or is under the control of the debtor on the date of conversion. Thus, "in the typical pre-confirmation conversion from Chapter 13 to Chapter 7, any property in the hands of the Chapter 13 trustee will be returned to the debtor and the debtor will be entitled to retain most, if not all, property acquired during the pendency of the Chapter 13 case." *In re Siegfried,* 219 B.R. 581, 584 (Bankr. D. Colo. 1998). An important

exception was added to this rule by §348(f)(2), which provides that:

> If the debtor converts a case under chapter 13 of this title to a case under another chapter under this title in bad faith, the property of the estate in the converted case shall consist of the property of the estate as of the date of conversion.

11 U.S.C. § 348(f)(2) (emphasis added).[7]   Accordingly, if the case is converted in bad faith, "any property in the hands of the Chapter 13 trustee and, potentially, any property acquired by debtor during the pendency of the Chapter 13 case, will become property of the Chapter 7 estate." *In re Siegfried*, 219 BR. at 584.  *See also In re Campbell*, 313 B.R. 313, 320-21 (10th Cir. BAP 2004) (reasoning that property revested in the debtor under §1327(b) or §522(l) must be recaptured by 348(f) in order for 348(f) to have meaning).

Bad faith is not defined in the Bankruptcy Code nor has the term as used in §348(f)(2) been interpreted by any court in this jurisdiction.  In *In re Siegfried,* 219 B.R. at 585, and *Warren v. Peterson*, 298 B.R. 322, 327 (N.D. Ill. 2003), the courts defined bad faith by referring to the term "good faith" in 11 U.S.C. §1325(a)(3).  The Fifth Circuit long-ago adopted a "totality of the circumstances" test for deciding whether a Chapter 13 plan has been filed in good faith and satisfies §1325(a)(3).  *See, e.g., Public Finance Corp. v. Freeman*, 712 F.2d 219, 221 (5th Cir. 1983); *In re Chaffin*, 836 F.2d 215, 217 (5th Cir. 1988).  Likewise, this Court and other courts have recognized that "[a]lthough it is not specified in the Code, good faith is an implicit jurisdictional requirement for granting relief under Title 11 and that lack of good faith is a basis for dismissal" under §1307 of the Bankruptcy Code.  *In re Dickerson*, 232 B.R. 894 (Bankr. E.D. Tex. 1999).  "[T]he focus of the good faith inquiry under both Sections 1307 and

---

[7] This provision was amended by the Bankruptcy Abuse and Consumer Protection Act of 2005. The amendment was non-substantive.  In particular, the words "of the estate" were added to qualify the first reference to property.

1325 is often whether the filing is fundamentally fair to creditors and, more generally, is the filing fundamentally fair in a manner that complies with the spirit of the Bankruptcy Code's provisions."   *In re Love,* 957 F.2d 1350, 1357 (7th Cir. 1992).   Among the circumstances courts consider in evaluating good faith are:

> • the nature of the debt
> • whether the debt would be nondischargeable in Chapter 7
> • the timing of the bankruptcy petition
> • the debtors' motive in filing the petition
> • how the debtors' actions affected creditors
> • the debtors' treatment of creditors before and after the petition
> • whether the debtor has been forthcoming with creditors and court

*Id.   See also, e.g., In re Stathatos*, 163 B.R. 83 (N.D. Tex. 1993) (applying the factors listed in *Love*); *In re Leavitt*, 171 F.3d 1219 (9th Cir. 1999) (reciting a list of factors similar to *Love*).

Bad faith, like good faith, must be determined based on the totality of the circumstances.   In determining whether a Chapter 13 case has been converted in bad faith, the Court considers whether the conversion was motivated by an inability to make required payments to the Chapter 13 trustee.   The Court also considers whether the debtors have been forthcoming regarding the existence of any post-petition change in circumstances that might affect their ability to make payments to their creditors and whether the conversion would create a windfall for the debtors (other than a decrease in liabilities) to which they would not have been entitled but for the existence of their pending Chapter 13 case.

Here, the Debtors converted their bankruptcy case after receiving notice that Horace would lose his job at the Small Business Administration.   The Debtors assert that this was the reason for the conversion.   The Court, however, finds that the Debtors'

assertion and the Debtors' testimony lack credibility.  At the time of conversion, the Debtors were current in their plan payments.  Although Horace testified that they converted their case out of fear that they would not be able to make required plan payments, the Debtors had the ability to continue making such payments to the Chapter 13 trustee for the foreseeable future from the proceeds of the Inherited IRA and Horace's inheritance under the Will.  Notably, the Debtors could have easily paid their Plan in full, which would have resulted in a meager 1.04% recovery for unsecured creditors.  Indeed, the proceeds from the Inherited IRA and Anita's Will were sufficient to pay all of the Debtors' pre-petition creditors in full without any bankruptcy protection.  The Inherited IRA alone was worth almost three years of Horace's salary at the Small Business Administration.

The Debtors' conduct before and after conversion reflects that they were unconcerned about their financial condition and that they were wholly unconcerned about repaying their unsecured creditors (except to the extent their unsecured creditors happened to be family members).  After Horace received his inheritance, the Debtors increased their discretionary expenses.  The Debtors continued spending, rather than tightening their belts, after Horace lost his job with the Small Business Association.

The Debtors repeatedly failed to disclose all of their post-petition assets to the Chapter 7 trustee and made false representations regarding the magnitude of Horace's inheritance.  The Debtors withdrew and spent a significant amount from the Inherited IRA before the exemption period expired.  It also is significant that the Debtors selectively paid off unsecured debts owed to family members in full while, at the same time, seeking to convert their case – thereby reducing their payment to their existing,

18

unsecured creditors from a mere 1.04% under the Plan to nothing.  The Court finds and concludes that the Debtors converted their case to Chapter 7 in a deliberate attempt to avoid paying their unsecured creditors even the small amount they would have received under the Debtors' Plan. The Court further concludes that, under the circumstances, the Debtors converted their case to Chapter 7 in bad faith and that the funds remaining in the Inherited IRA should be turned over to the Chapter 7 trustee.

### D. Violation of the Automatic Stay or Avoidable Post-Petition Transfer

The Chapter 7 trustee seeks a judgment that the Debtors willfully violated the automatic stay by using or spending the Inherited IRA and property Horace inherited under the Will and/or a judgment that the challenged post-petition transactions are avoidable under §549 of the Bankruptcy Code.  However, as the Chapter 7 trustee acknowledges in his proposed findings for this Court, an essential feature of a Chapter 13 case is that the debtor retains possession of and may use all the property of his estate. Section 1303 of the Bankruptcy Code specifies rights and powers over estate property that the Chapter 13 debtor has exclusive of a Chapter 13 trustee, whose rights and duties are defined by §1302 of the Bankruptcy Code.  *See* 11 U.S.C. §§ 1302 and 1303.  *See also* FED. R. BANKR. P. 2015(c) (addressing the duty to keep records, make reports, and give notice of the case).  The Court, therefore, concludes that the transactions that occurred prior to the conversion of this case from Chapter 13 to Chapter 7 did not violate the automatic stay imposed by §362(a) of the Bankruptcy Code.

The transactions that occurred post-conversion may be actionable.  Following conversion of this case to Chapter 7, a Chapter 7 trustee was appointed under §702 and charged with the responsibility of "collect[ing] and reduc[ing] to money the property of

the estate for which such trustee serves, and clos[ing] such estate as expeditiously as is compatible with the best interests of parties in interest."   11 U.S.C. §704(1).   The Debtors' conversion schedules filed on April 17, 2007, reflect that they were aware of the possibility of a dispute regarding whether the Inherited IRA was property of their Chapter 7 estate and could be exempted.  The Debtors nonetheless continued to spend the money Horace inherited from Anita and to withdraw funds from the Inherited IRA for their personal use before the time for the Chapter 7 trustee to object to their claimed exemptions had expired.  A few days after receiving the Chapter 7 trustee's objection to his claimed exemption of the Inherited IRA, Horace withdrew an additional $20,000.

Section 362(h) of the Bankruptcy Code provides that an individual is entitled to recover damages, attorney's fees, and costs, and, possibly, punitive damages due to a willful violation of the automatic stay.[8]  Although there is a split of authority as to whether a trustee for the bankruptcy estate of a corporate debtor is an "individual" for purposes of §362(h), the Chapter 7 trustee in this case is an individual representing the estate of individual, consumer debtors and has standing to bring an action against the Debtors for a willful violation of the automatic stay.  *See, e.g., In re Garofalo's Finer Foods, Inc.*, 186 B.R. 414 (E.D. Ill. 1995) (trustee is an "individual" for purposes of §362(h)).  *But see, e.g., In re Pace*, 67 F.3d 187 (9th Cir. 1995) (trustee is not an individual for purposes of §362(h)).  The Chapter 7 trustee, as the party seeking damages pursuant to §362(h), has the burden of proving what damages were incurred and what relief is appropriate.  *See, e.g., In re Dunn,* 202 B.R. 530, 531 (Bankr. D. N.H. 1996) ("The movants ... have the burden of proof with regard to showing ... that the willful

---

[8] In this case, the Chapter 7 trustee did not include a request for punitive damages or his attorneys' fees in the parties' Joint PreTrial Order.

violation caused the movants to suffer harm and incur damages, and then to show what relief is appropriate.").

A violation of the automatic stay is willful if the action is done deliberately. *See, e.g., In re Xavier's of Beville, Inc.,* 172 B.R. 667, 671 (Bankr. M.D. Fla. 1994). Ignorance of the law is no excuse. *See, e.g., In re Bragg*, 56 B.R. 46, 49 (Bankr. M.D. Ala. 1985); *In re Halas*, 249 B.R. 182, 191 (Bankr. N.D. Ill. 2000). A willful violation of the stay does not require a specific intent to violate the stay. *See Nissan Motor Acceptance Corp. v. Baker*, 239 B.R. 484 (N.D. Tex. 1999); *In re Zaber,* 223 B.R. 102, 107 (Bankr. N.D. Tex. 1998). Rather, as the Fifth Circuit recently explained, §362(h) "provides for damages upon a finding that the defendant knew of the automatic stay and that the defendant's actions which violated the stay were intentional. Whether the party believes in good faith that it had a right to the property is not relevant to whether the act was "willful" or whether compensation must be awarded." *In re Chesnut,* 422 F.3d 298, 302 (5th Cir. 2005) (quoting *In re Taylor,* 884 F.2d 478, 482 (9th Cir. 1989)).

In this case, the Debtors testified at trial that they believed not only that they had a right to the Inherited IRA and the property that Horace inherited under the Will, but that the Inherited IRA and the property Horace inherited under the Will were not property of their bankruptcy estate. Despite this testimony, the Debtors' conversion schedules show that they were aware that the Chapter 7 trustee might contest whether the Inherited IRA was property of the estate. The Debtors certainly knew of the existence of the automatic stay. The Debtors nonetheless continued to withdraw funds from the Inherited IRA without seeking permission from this Court – even after receiving the Chapter 7 trustee's objection to their claimed exemption of the Inherited IRA. The Court concludes that,

under the circumstances of this case, the Trustee has established that Horace acted in "bad faith" by withdrawing $20,000 from the IRA on July 3, 2007, *see Nissan Motor Acceptance Corp. v. Baker,* 239 B.R. at 490; *Gullett v. Continental Cas. Co.,* 230 B.R. 321, 331 (Bankr. S.D. Tex. 1999), *rev'd on other grounds,* 253 B.R. 796 (S.D. Tex. 1999), or "with actual knowledge that he was violating the federally protected right or with reckless disregard of whether he was doing so," *In re Sanchez,* 372 B.R. 289, 315 (Bankr. S.D. Tex. 2007) (quoting *In re Lile,* 103 B.R. 830, 841 (Bankr. S.D. Tex. 1989)).

In the alternative, the Chapter 7 trustee is entitled to judgment on his claim for avoidance of the post-petition transfer under §549 of the Bankruptcy Code. Section 549(a) permits a trustee to void an unauthorized, post-petition transfer of property of the estate if the following elements are present: (1) property was transferred; (2) the property was property of the bankruptcy estate; (3) the transfer occurred after the commencement of the case; and (4) neither the bankruptcy court nor the Bankruptcy Code authorized the transfer. See 11 U.S.C. §549(a)(1) – (2). If the Chapter 7 trustee establishes these elements, the trustee can then recover the property transferred (or its value) from the transferee. *See* 11 U.S.C. §550(a). The Chapter 7 trustee established such a transfer in this case with respect to the withdrawal of $20,000 from the Inherited IRA on July 3, 2007, and the Debtors failed to carry their burden to establish the validity of the withdrawal. *See* FED. R. BANKR.P. 6001 ("Any entity asserting the validity of a transfer under §549 shall bear the burden of proof.") The Court, therefore, concludes that the $20,000 withdrawal was an avoidable transfer that may be recovered by the Chapter 7 trustee pursuant to §§ 549 and 550 of the Bankruptcy Code.

## E. Objections to Discharge

Section 727 of the Bankruptcy Code provides that the Court must grant a discharge to a Chapter 7 debtor unless one or more of the specific grounds for denial of a discharge listed in subparagraphs (1) through (10) are proven to exist. The provisions governing denial of a debtor's discharge are construed liberally in favor of the debtor and strictly against the party challenging the debtor's right to a discharge. *Friendly Fin. Discount Corp. v. Jones (In re Jones)*, 490 F.2d. 452, 456 (5th Cir. 1974). The burden of proof with respect to all elements is on the party objecting to discharge. FED. R. BANKR. P. 4005.

In this case, the Chapter 7 trustee asserts in his Original Complaint that the Debtors should be denied a discharge pursuant to §727(a)(2)(B), (3), (4)(A), (D) and (5). However, in the parties' Joint Pretrial Order, the Chapter 7 trustee did not seek to establish grounds for denial of the Debtors' discharge pursuant to §727(a)(4)(D) or (5). Federal Rule of Civil Procedure 16(d), as adopted and applied to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7016, provides in pertinent part that a pre-trial order "controls the course of an action …." The Fifth Circuit has held on numerous occasions that a claim or defense not raised in the pretrial order may be deemed waived, even if it appeared in the complaint. *See, e.g., Elvis Presley Enters. v. Capece,* 141 F.3d 188, 206 (5th Cir. 1998). Thus, in this case, the Court concludes that the Chapter 7 trustee has waived his objections to the Debtors' discharge pursuant to §727(a)(4)(D) or (5) of the Bankruptcy Code83. The Court will address each of the Chapter 7 trustee's remaining objections to discharge in turn.

23

### 1.  11 U.S.C. §727(a)(2)(B)

First, the Chapter 7 trustee objects to the Debtors' discharge under § 727(a)(2).

Bankruptcy Code §727(a)(2) provides in pertinent part:

> (a) The court shall grant the debtor a discharge, unless … (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed – (A) property of the debtor, within one year before the date of the filing of the petition; or (B) property of the estate, after the date of the filing of the petition ….

11 U.S.C. §727(a)(2).  In this case, the Chapter 7 trustee seeks denial of the Debtors' discharge under §727(a)(2)(B) for concealing or transferring the Debtors' interest in the Inherited IRA and the property inherited under Anita's Will.

The Court finds that the Debtors concealed or transferred their interest in the Inherited IRA and Horace's inheritance under the Will with an intent to hinder, delay or defraud their creditors as required for a violation of §727(a)(2)(B).  Although the Debtors pre-conversion actions may be consistent with a belief that the Inherited IRA and Horace's inheritance under the Will were Horace's to spend as he liked, by the time they filed their schedules in their Chapter 7 case, the Debtors were aware that a possible dispute existed regarding whether the Inherited IRA was property of the Chapter 7 estate. The Debtors listed the Inherited IRA in their amended Schedule C but took the position that the Inherited IRA was not really property of the estate.  The Debtors then failed to forthrightly disclose the extent of Horace's inheritance under the Will to the Chapter 7 trustee at the meeting of creditors.  Instead, they testified under oath that the only significant things Horace had received from his mother were the house and the Inherited IRA.  They also (i) misled the Chapter 7 trustee regarding the extent of their withdrawals

from the Inherited IRA, (ii) delayed providing the Chapter 7 trustee their bank and credit records, and (iii) continued to make withdrawals from the Inherited IRA at a time when they knew the time for the Chapter 7 trustee to object to their claimed exemption of the Inherited IRA had not yet expired.  Under the circumstances of this case, and in light of the credible testimony at trial, the Court concludes that the Chapter 7 trustee has established that the Debtors violated §727(a)(2)(B) of the Bankruptcy Code.

### 2.   11 U.S.C. §727(a)(3)

Section 727(a)(3) is intended to allow creditors and/or the trustee to examine the debtor's financial condition and determine what has passed through a debtor's hands.  *See In re Esposito*, 44 B.R. 817 (Bankr. S.D. N.Y. 1984).  Section 727(a)(3) provides:

> The court shall grant the debtor a discharge, unless ... the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case[.]

11 U.S.C. §727(a)(3).  Where the debtors are married, both have an obligation to keep adequate records.  *See, e.g., Cox v. Landsdowne (In re Cox),* 904 F.2d 1399, 1402 (9th Cir. 1990); *D.A.N. Joint Venture, et al. v. Cacioli (In re Cacioli)*, 463 F.3d 229, 237 (2nd Cir. 2006).

Here, the Chapter 7 trustee complains that the Debtors made misrepresentations regarding the IRA and the Will at the meeting of creditors held on May 18, 2007, in their Chapter 7 case and that the Debtors withheld from him recorded information relating to their financial affairs.  The parties agree in the Joint Pretrial Order that the Debtors did not produce all of the documents requested by the Chapter 7 trustee until October 7, 2007 – following the Chapter 7 trustee's second formal discovery request and after the Chapter

7 trustee initiated this adversary proceeding.  The issue is whether this behavior rises to the level of a violation of §727(a)(3) or whether it should be treated essentially as a discovery dispute.

The Chapter 7 trustee admits that the requested documents were eventually produced, but he complains that they were not promptly produced.  This Court generally expects that discovery disputes will be resolved during the discovery period or at a final pretrial conference.  The Chapter 7 trustee in this case could have and should have addressed any failure to produce the requested documents in the context of a motion to compel production.  If the Debtors had persisted in an unjustified refusal to produce the requested documents, the Court could have taken action at that time.  And that action could have included the sanction of defaulting Debtors on the merits of the Chapter 7 trustee's claims.  The Court, however, concludes that the mere fact that the Debtors did not immediately produce all of the documents requested by the Chapter 7 trustee does not support a denial of discharge under §727(a)(3) of the Bankruptcy Code.

### 3.  11 U.S.C. §727(a)(4)(A)

Under this section, the bankruptcy court shall not grant the debtor a discharge if "the debtor knowingly and fraudulently, or in connection with the case ... made a false oath or account." 11 U.S.C. §727(a)(4)(A).  Stated differently, the debtor's discharge may be denied if the debtor makes a false statement in his schedules[9] or a false statement at an examination of him during the case.  *See In re Beaubouef,* 966 F.2d 174, 177-78 (5th Cir.

---

[9] Federal Rule of Bankruptcy Procedure 1008 provides that "[a]ll petitions, lists, schedules, statements of financial affairs, [etc.] shall be verified or contain an unsworn declaration as provide in 28 U.S.C. § 1746." *See* FED. R. BANKR. P. 1008.

1992).  "An omission of an asset can constitute a false oath."  *Cadle Co. v. Pratt (In re Pratt),* 411 F.3d 561, 566 (5th Cir. 2005).

Here, the Chapter 7 trustee complains that the Debtors failed to schedule their interest in Anita's IRA on the Petition Date.  The Chapter 7 trustee, however, failed to establish by a preponderance of the evidence that Horace was aware on the Petition Date that he would receive the contents of Anita's IRA in the event of her death.  Moreover, the Court has previously discussed the fact that Horace's interest in the IRA as of the Petition Date was in the nature of a contingent beneficial interest in a spendthrift trust at the time the Debtors filed their bankruptcy case.  The Court, therefore, concludes that the Debtors' failure to list an interest in the IRA in their original bankruptcy schedules, assuming Horace was aware of his contingent interest in the IRA, does not violate §727(a)(4)(A) of the Bankruptcy Code.

The Chapter 7 trustee also complains that the Debtors testified falsely at their meeting of creditors in their Chapter 7 case.  *See Matter of Beaubouef,* 966 F.2d 174, 178 (5th Cir. 1992) (noting that false oaths under §727(a)(4) include false statements or omissions from schedules and false statements made at a first meeting of creditors).  Both Debtors were present at the meeting of creditors and both testified, under oath, that their bankruptcy schedules included all of their property.  After discussing the Inherited IRA with the Chapter 7 trustee, Horace stated, under oath, that "the only other thing we received was [my mother's] house."  Horace stated, under oath, that they had spent money he received from the sale of his mother's house on living expenses while he was laid off from his job at the Small Business Administration.  The Debtors failed to disclose that Horace had received funds from two of his mother's bank accounts totaling

approximately $14,000, the cash value of a life insurance policy in the amount of $986.49, and two cars, including the 2005 Kia Amante that they were driving.  Although he had withdrawn $22,900 from the Inherited IRA between December 2006 and May 2007, Horace told the Chapter 7 trustee that he had only taken "a little out for living expenses here and there."

The Fifth Circuit explained in *Beaubouef,* "the subject matter of a false oath is 'material,' and thus sufficient to bar discharge, if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence or disposition of property." *Beaubouef,* 966 F.2d, at 179 (quoting *In re Chalik,* 748 F.2d 616, 617 (11th Cir. 1984)).  The assets Horace inherited under his mother's Will easily satisfy this materiality standard.  As previously discussed, the amended Schedule C filed by the Debtors in their Chapter 7 case reflects that they knew that an issue existed with respect to whether the property they had inherited during their Chapter 13 case was property of their estate.  It appears to the Court that the Debtors either sought to hide the extent of the dispute or to avoid any immediate demand from the Chapter 7 trustee to turnover to him whatever portion of Horace's inheritance remained in their bank accounts.

The Chapter 7 trustee also complains in his pre-trial brief that the Debtors grossly misstated their post-conversion income on their amended Schedule I, which listed income of only $3,276 per month as of April 18, 2007.  The Debtors failed to disclose that they were withdrawing approximately $4,500 per month from the Inherited IRA – in their amended Schedule I, which was filed on the conversion date, the Debtors stated under oath that their monthly income consisted of $1,576 in "family contribution" and $1,700

28

in IRA withdrawals.    This Court finds that, when Horace's withdrawals from the Inherited IRA are taken into account, the Debtors' monthly income was in excess $3,276 as of the conversion date.    Moreover, as this Court has previously discussed, Horace was re-hired by the Small Business Administration the day after the conversion date.    Based on Horace's lack of credibility, together with the additional evidence and testimony at trial, the Court concludes that the Debtors monthly income at the moment of their conversion exceeded the amount set forth in their amended Schedule I, which is another example of a false oath.

### CONCLUSION

For the foregoing reasons, the Court concludes that the Debtors converted their bankruptcy case to Chapter 7 in bad faith and are not entitled to receive a discharge in bankruptcy.    The Debtors must turnover the Inherited IRA to the Chapter 7 trustee for distribution to their creditors.    Moreover, the $20,000 withdrawal from the Inherited IRA is an avoidable transfer that may be recovered by the Chapter 7 trustee from Horace Mullican pursuant to §§ 549 and 550 of the Bankruptcy Code.

Signed on 9/30/2008

*Brenda T. Rhoades*    SR

HONORABLE BRENDA T. RHOADES,
UNITED STATES BANKRUPTCY JUDGE